FRANÇOIS TREMBLÉ, THERESE TREMBLÉ, AND BENOIT TREMBLÉ, BY BENOIT TREMBLÉ THEIR NEXT FRIEND, *versus* JOSEPH MARSAC, JACQUES MARSAC, PIERRE DEQUIN-DRE, AND JEAN BAPTISTE PELTIER

May 28, 1829

William W. Petit, solicitor for complainants (1825).
Alexander D. Fraser, solicitor for complainants (1826)(1833).
Charles Larned, solicitor for defendants (1824)(1833).
John L. Leib, solicitor for Dequindre (1825).
Leib & Stevens, solicitors for Dequindre and Peltier (1827).
Stevens, Larned & Torrey, solicitors for defendants (1828).

## [OPINION]

The Heirs at Law of Francis Trombly vs the Heirs at Law of Francis Marsac and Dequindre & Peltier claiming as purchasers under the Heirs of Marsac—

So far as the facts of the case are disclosed and made out by the Bill, answers & evidence are these— Francis Marsac deceased father of Joseph Fr. Marsac and Jacques Marsac, the def⁸ his Heirs at Law, claimed at tract of land on Trembly's Creek of 6 arpents in front by 40 arpents in depth. That he entered the said tract of Land with the Land Commissioners of the U. States, at Detroit, in the year of 1809 or prior thereto in his own name, claiming to have the same confirmed to him under the laws of the United States, which claim was sustained by the Commissioners and confirmed to him— The Land being so confirmed to him and before any patent was issued by the President for said Land, the said Francis Marsac bargained and sold the same to Francis Trombly the father of the complainants for the consideration of Fifty five pounds N. York Currency—of this sum the said Trombly paid the said Marsac about 50 pounds at or about the time of the purchase and the Balance of said sum afterwards— That under said sale and purchase the said Marsac and at the time it was made, put said Trombly into quiet possession of said Land, which he enjoyed until some time in 1811 or 1812 when from the dangers and difficulties of the times he removed from said Land and premises to river Raison [?] and did not again return to occupy it. That the said Marsac did not make any Deed or conveyance of the Land at the time of the purchase or afterwards, but agreed to make such conveyance as soon as he s⁴ Francis should receive from the president of the U. States a Patent for said Land— The said Francis Trombly died in 1813 and the said Francis Marsac shortly afterwards and before he rec⁴ the presidents patent for said Land altho said Patent was duly sig⁴ and executed on the first day of June 1811. The patent so executed is in the name of Francis Marsac, and came to the hands and possession of the said Joseph & Jacques Marsac as early as the 3ᵈ of June 1819, on which day it appears that Jacques Marsac assigned and conveyed his interest in and to said Land to Joseph

F. Marsac his Brother and co-heir at Law of said Francis Marsac deceased— Joseph Francis Marsac afterwards sold and conveyed Towit on the 8th of June 1719 One hundred acres and 74/100 of an acre of the same tract of land to Peter Dequindre, for 250 doll[s] by Deed acknowledged & recorded— And afterwards to wit, on the 2[d] day of Nov[r] 1822, the s[d] Joseph F. Marsac and Ann his wife by deed duly executed, sold and conveyed to Jean Bap[t] Peltier for the consideration of 155 doll[s] one hundred acres and seventy four and one half one hundredths of an acre part and parcel of said tract of Land, and being the residue thereof—

The complainants charge the said defendants Jacques and Joseph Marsac, the defendants Heirs at Law of said Francis Marsac their father with knowledge of the Contract entered into between the said Francis Marsac and Francis Trombly at the time it was closed and at the time Jacques Marsac undertook to assign and transfer his interest in said tract of Land to the said Joseph F. Marsac— The complainants charge the said Pierre Dequindre with knowledge of the agreement between Marsac & Trombly and of the claim of the Heirs of Trombly to said tract of Land at the time and before he purchased a part of s[d] Land of Joseph F. Marsac— They also charge Jean Bap[t] Peltier with purchasing with knowledge and Pendens Lites of their Bill against the def[ts]— The Marsacs. And claim a specific decree of performance of the afores[d] contract entered into between the said Francis Marsac and the said Francis Trombly— The several defendants by their answers have denied any personal knowledge of any contract, agreement or sale of the Land in dispute, by the late Francis Marsac to the late Francis Trombly,— so far as relates to the Heirs of Marsac, judging from the circumstances attending the alleged sale and payment as proved by the witnesses, and considering their ages at the time the transaction took place, that they were both residing at home and were constantly employ[d] about their late fathers business and probably in hearing distance of several conversations that were had by their late father with his neighbors relating to this very transaction, I am reluctantly constrained from giving credit to their denial— But whether the Heirs were or not not ignorant of the sale of said Land by their late father can make no difference as to their liability in reference to that contract— They do not claim as purchasers for a valuable consideration— They claim as Heirs and come in by descent, and are liable in the same manner as their ansestor would be if living— And if the case is so made out as to require a decree for specific performance ag[t] Fr[s] Marsac, if living, to convey the Land in question, it must be so decreed ag[t] the Heirs, and that too whether they had notice at the time of the sale and contract or not.

The Defendants the Heirs, have undertaken to set up in their defense, that the contract, between the s[d] Marsac and Trombly, was after it was made and during the lifetime of said Marsac and Trombly rescinded and vacated and the consideration money Paid by Trombly, refunded him by Marsac— Such they state they had heard & that they believe it to be the fact— The defendants appear to have placed their chief hopes of defense on this point, and well they might, for if they were able to sustain it, further proceedings would have been rendered unnecessary— To sustain this point of their defense, they introduce the testimony of one Yax taken before the master, who swears to the fact set up in defense— The complainants were aware that the testimony of Yax was important and to avoid its influence attacked the witnesses credibility and in my opinion, have succeeded   It is singular indeed, that amongst the numerous persons who conversed with M[r] Marsac, that M[r] Yax should have been the only one to whom M[r] Marsac should have made the disclosure— Why withhold the fact from Justice Labidi who was employ[d] to draw

out the Deed when the Patent should arrive? and particularly Two or three months before M$^r$ Marsac died and at a time when M$^r$ Marsac introduced this very subject into conversation and expressed great anxiety to receive the patent that he might be enabled to convey the Land under the agreement— Putting aside the evidence of Yax as wholly discredited, the defense so far as the Heirs are called on fails, and if the evidence supports the agreement set up, and I think it does a Decree must pass against the defendants Jacques & Joseph Marsac, as prayed if they are able to carry such decree into effect.— What is their present situation in reference to the Lands claimed? It is proved the Marsac's have parted with their interest in the whole tract of land in dispute by sale and transfer, for a valuable consideration to Dequindre and Peltier who were purchasers and if they had not notice of trombly's interest and claim to the Land, they will stand in the light of innocent purchasers and cannot be affected by the Decree of this Court. Had they or either of them at the time or before they purchased notice of the claim of the Heirs of Trombly? Joseph Trombly and Gagetan Trombly both Testify, that previous to the purchase of Dequindre, they gave him notice, and at the request and direction of Benoni Trombly the adm$^r$ and guardian, of the estate and children of Francis Trombly, of the sale made by Francis Marsac to Francis Trombly of said Land and that they cautioned s$^d$ Dequindre against purchasing the same from Joseph F. Marsac, as the heirs would inforce their rights to the Land under said sale— The Testimony of Gagetan Trombly has been impeached by the Defendants and if it stood alone and unfortified by circumstances would be considered of little credit— The Testimony of Joseph Trombly is not questioned and taking it for true, connected with the evident notoriety of the sale, thro' the whole settlement, as proved by several reputable witnesses I can have no doubt of Dequindre being fully apprised of the sale before his purchase— He must have been led into the error of supposing that the Heirs of Marsac had authority to sell and convey the land in question, notwithstanding the contract of sale previously made by Francis Marsac, by finding the Patent of the President in possession of the Marsacs, his heirs at law— I draw this conclusion from the remarks made by him to the witnesses— He evidently mistook the Law and not the facts of the case— His advisers appear to have fallen into the same error— I am of opinion however that the mistake cannot avail him to affect the claims of the Heirs of Francis Trombly—

The same remarks apply to the claim set up by Jean Bap$^t$ Peltier— If the evidence is to be believed he had notice in fact of the claim of the Heirs of Trombly to the land, in addition to such notice he purchased during the actual pendency of the complainants Bill, which of itself is constructive notice to him, of the claim— It is a well settled principle of Law, and supported by the soundest reasons, that neither of the parties litigant, by sale or transfer of his right or interest, shall destroy or vary the legal or equitable rights of the other party— Nor will it vest in the person who has the rashness to make such purchase under such circumstances, superior rights— He places himself in the shoes of the grantor, and must submit to the application of the Law to the claim as it existed before he became a party voluntarily in the litigation—

It was intimated by one of the counsel for the def$^t$ that the Court could not look beyond or behind the Patent, to support a contract, made before the Patent of the President issued, relating to the Land covered by the Patent— How far the observation would be applicable to an adverse claim to the one set up under the patent, I am not now called on to decide— When that question is presented to the Court in a case properly involving it, the Court must and will decide it— In the present

374

case in hearing that point is not brought before the Court. The parties complainants and defendants, derive their rights from the same sourse, but at intermediate stages of the claim— And according to my present view, the legal title to the Land in question was vested in Francis Marsac by the confirmation of his claim to the land in question, by the commissioners of the Land office of Detroit— and that the Patent refers back to that date, and would be supported against a patent issued by the President himself of a prior date, if such Patent of a prior date should have issued to another for the Land in dispute, if such prior Patent should have issued after the date of such confirmation— I am not desirous of any further argument on the point proposed by Counsel being satisfied it would not avail in the present case— I am of opinion that a Decree must pass for the complainants against all the defendants as prayed—